# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Robert Aaron Peterson,

                Plaintiff,        Civ. No. 11-2578 (RHK/FLN)
                                         **MEMORANDUM OPINION**
                                         **AND ORDER**

v.

Officer Michael Kopp, in his individual and
official capacities, and the Metropolitan Council,

                Defendants.

Zorislav R. Leyderman, The Law Office of Zorislav R. Leyderman, Minneapolis, Minnesota, for Plaintiff.

Andrew D. Parker, Anthony G. Edwards, Parker Rosen LLC, Minneapolis, Minnesota, for Defendants.

## INTRODUCTION

This case arises out of Plaintiff Robert Peterson's arrest by Defendant Metro Transit Peace Officer Michael Kopp. Peterson and others were gathered at a bus stop late at night in downtown Saint Paul when Kopp ordered him and the others to leave. A verbal altercation ensued, resulting in Kopp pepper-spraying and arresting Peterson for trespass. Peterson commenced this action against Kopp and his employer, Defendant Metropolitan Council, alleging various constitutional and state-law claims. Defendants now move for summary judgment. For the reasons that follow, the Court will grant the Motion as to Peterson's federal claims and decline to exercise jurisdiction over his remaining state-law claims.

**BACKGROUND**

Although the parties' accounts of what occurred differ in some respects, as appropriate on a motion for summary judgment, the Court recounts the events in the light most favorable to Peterson. E.g., Rau v. Roberts, 640 F.3d 324, 327 (8th Cir. 2011).

On Monday, April 25, 2011, at about 11:00 p.m., Peterson and a friend, Brianna Bloom, arrived at the bus stop on the corner of East Fifth Street and Minnesota Street in downtown Saint Paul. (Peterson Dep. at 30-31.) They were waiting for a bus home to Maplewood. (Id. at 32.) They befriended three men at the bus stop, who had inquired about what Peterson had in his backpack. (Id. at 34.) He showed them it was a hookah, a kind of pipe, and offered to smoke with them. (Id. at 35-37.) Peterson set it up on top of the bike lockers where the group was seated next to the bus stop. (Id. at 37.) He and Bloom then decided to skip the first bus that came by and take a later one. (Id. at 39.)

Meanwhile, Kopp, an officer for the public transportation authority, was on duty in downtown Saint Paul. After responding to a nearby fight, he had parked his squad car in a lot behind the bus stop at East Fifth and Minnesota where Peterson and the others were gathered. (Kopp Dep. at 144.) That intersection has the highest crime rate in downtown Saint Paul. (Olson Aff. ¶ 6.) From his squad car he observed Peterson, Bloom, and the three men waiting at the bus stop on the corner, smoking from a hookah. (Kopp Dep. at 144-46.) Several buses had gone by without any of them boarding. (Id. at 147-48.)

Around 11:20 p.m., Kopp approached the group, explained that they were not allowed to remain there if they were not taking the buses, and ordered them to leave.

(Peterson Dep. at 40.) Peterson described Kopp's manner as stern and "very aggressive." Id. Most of the group started to walk away, but Peterson and one other stayed put. (Id. at 41-42, 44-45.) That man told Kopp that "he didn't have to leave, it was a public bus stop and he was waiting for his next bus to come." (Id. at 41-42.) He and Kopp were "yelling back and forth" for approximately thirty seconds to three minutes. (Id. at 42.) Meanwhile, Peterson remained seated on top of the bike lockers at the stop and began to disassemble the hookah. (Id. at 45.) The others who had begun to walk away were still on the corner; they had stopped about six to eight feet from the bike lockers and were observing. (Id. at 52.)

After the argument ended, Peterson said to Kopp, "We are leaving. You don't have to be so rude." (Id. at 46.) Then, he asked Kopp for his badge number. (Id. at 46-48.) Kopp responded, "You have no right to have my badge number," and Peterson replied, "I have every right." (Id.) Kopp acknowledges that during their encounter Peterson never raised his voice or yelled (Kopp Dep. at 164, 168), although he felt the situation was "threatening" (id. at 170) because the three other men from the group remained nearby (Peterson Dep. at 44, 52).

While arguing over the badge number, Peterson stopped disassembling his hookah—a process that he acknowledges should take no more than one minute from start to finish (id. at 45)—and took out his cell phone to record Kopp's badge number (id. at 49). At this, Kopp approached Peterson, grabbed him by the arm and pulled him off the bike lockers. (Id. at 50.) He landed on his feet and backed away a few steps, then put his arms up and said to Kopp, "You can't handle me like that." (Id. at 51.) Kopp responded

by pepper-spraying him in the face. (Id. at 53-54.) Peterson stumbled backward, yelling, "What the fuck? What the fuck? What did I do? I didn't do anything. Police brutality." (Id. at 54-55.) Kopp then grabbed his arms, pushed him up against the lockers and handcuffed him, put him in the back of the squad car, and rolled down the windows for him. (Id. at 55; Kopp Dep. at 195.)

Kopp charged Peterson with trespass and took him to the Ramsey County Jail. (Peterson Dep. at 57, 61.) He was booked and released after spending six hours in the jail. (Id. at 59, 61.) The trespassing charge was later dismissed. (Id. at 61.)

As a result of the pepper spray, Peterson alleges that he suffered brief difficulty breathing, intense pain and burning for several hours, some burning and discomfort in his face for five to seven days, and peeling skin under his left eye. (Id. at 54, 62, 65.) He alleges no other physical injuries from the incident. Peterson also alleges that he is more uncomfortable and "on edge" when going out in public since the arrest, but it has not significantly affected his daily activities. (Id. at 66.) He did not seek medical treatment for his alleged physical or emotional injuries. (Id. at 66-67.)

In August 2011, Peterson commenced this action against the Metropolitan Council and Kopp in his individual and official capacities, asserting nine claims: retaliation in violation of the First Amendment against Kopp (Count I), use of excessive force in violation of the Fourth Amendment against Kopp (Count II), unlawful arrest in violation of the Fourth Amendment against Kopp (Count III), retaliation in violation of the First Amendment and unreasonable seizure in violation of the Fourth Amendment against the Metropolitan Council (Count IV), and five state-law claims against both Defendants

(Counts V–IX). Count IV against the Metropolitan Council was voluntarily dismissed by stipulation of the parties (Doc. No. 14). Defendants now move for summary judgment on all remaining claims. The Motion has been fully briefed, the Court heard oral argument on September 24, 2012.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Celotex, 477 U.S. at 322; Whisenhunt v. Sw. Bell Tel., 573 F.3d 565, 568 (8th Cir. 2009). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009); Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078–79 (8th Cir. 2008).

## ANALYSIS

### I. Federal Claims

Kopp argues that he is entitled to qualified immunity from liability on Peterson's federal claims. Qualified immunity protects a government official from liability "unless

the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." Henderson v. Munn, 439 F.3d 497, 501 (8th Cir. 2006) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The purpose of qualified immunity is to allow government officials to carry out their discretionary duties without fear of personal liability or harassing litigation. The standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).

To determine whether an officer is entitled to qualified immunity, the Court conducts a two-part inquiry: it asks (1) whether the facts alleged, viewed in the light most favorable to the plaintiff, show that the defendant violated a constitutional or statutory right, and (2) whether the right at issue was clearly established at the time of the offending conduct. E.g., Avalos v. City of Glenwood, 382 F.3d 792, 798 (8th Cir. 2004) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). The Court may decide which determination to make first, Pearson v. Callahan, 555 U.S. 223, 235–36 (2009), and an officer is entitled to immunity if either of the two requirements is lacking.

### A. Unlawful Arrest (Count III)

Peterson alleges that Kopp wrongfully arrested him without probable cause to believe he had committed any crime. Kopp did not violate Peterson's Fourth Amendment rights if there was probable cause to believe Peterson committed a crime or if he had a "mistaken belief that [he had] probable cause . . . provided that the mistake is objectively reasonable." Bernini v. City of Saint Paul, 665 F.3d 997, 1003 (8th Cir.

2012). Accordingly, Kopp is entitled to qualified immunity if he had either "arguable" or actual probable cause to believe Peterson was trespassing.[1] Id.

It is a misdemeanor in Minnesota to trespass on the premises of another and "refuse[] to depart from the premises" upon lawful demand. Minn. Stat. § 609.605. Peterson avers that Kopp did not have probable cause for a trespass arrest because he did not refuse to depart the bus stop. In support, he points to his initial statement, "We are leaving," and the fact that he had begun to disassemble his hookah. Kopp argues that he reasonably believed Peterson was refusing to depart because he had ordered the group to leave the bus stop and Peterson did not leave. Instead, he remained seated, argued with Kopp, and eventually pulled out his cell phone, a further indication that he did not intend to leave.

Given Peterson's mixed signals, the Court concludes that Kopp could have reasonably interpreted his behavior as a refusal to depart, giving him arguable probable cause to arrest Peterson for trespass. Peterson acknowledges that he did not leave, or even stand up, after Kopp ordered him to. This alone could reasonably be interpreted as a refusal to depart. Despite his initial statement to Kopp that they were leaving, he did not immediately depart and neither did the others—who remained at the bus stop, just six or eight feet away. Although disassembling his hookah signaled that he was preparing to leave, Peterson acknowledged that he stopped disassembling the hookah during the

---

[1] Kopp also argues that he had probable cause to arrest Peterson for spitting and obstructing legal process, although he chose not to. However, because the Court finds that Kopp had probable cause to arrest Peterson for trespass, it declines to address these alternative grounds.

argument. He also acknowledges that he attempted to use his cell phone. Objectively, these actions could signal that he had changed his mind and was no longer preparing to leave. Peterson explains that he only took out his phone to record Kopp's badge number, but there is no suggestion that Kopp would have known that. Overall, the sequence of Peterson's behavior supports Kopp's belief that he was not leaving the bus stop as ordered.

Because an officer could reasonably interpret Peterson's behavior as a refusal to depart the bus stop—even under Peterson's own version of what happened that evening, Kopp had arguable probable cause to arrest him for trespass and is entitled to qualified immunity from this claim.

### B. Excessive Force (Count II)

An officer is entitled to qualified immunity on an excessive-force claim if his conduct was either not excessive or did not violate "clearly established" law at the time. Kopp argues that, regardless of whether the force he used was constitutionally excessive, he did not violate "clearly established law" at the time because it caused only *de minimis* injury. The Court agrees.

At the time of Peterson's arrest in April 2011, it was clearly established that an arrestee had a right to be free from the use of excessive force. "It was not clearly established, however, that an officer violated the rights of an arrestee by applying force that caused only *de minimis* injury." Chambers v. Pennycook, 641 F.3d 898, 908 (8th Cir. June 6, 2011). At that time, it was an "open question in this circuit whether an excessive force claim requires some minimum level of injury." Id. at 904 (quoting

Copeland v. Locke, 613 F.3d 875, 881 (8th Cir. 2010)). <u>Chambers</u> laid this issue to rest and clarified that even a *de minimis* injury can support an excessive-force claim. But before <u>Chambers</u>, when Peterson's arrest took place, a reasonable police officer "could have believed that as long as he did not cause more than *de minimis* injury to an arrestee, his actions would not run afoul of the Fourth Amendment." <u>Id.</u> So Kopp did not have "fair warning" that his conduct might be unconstitutional. <u>See id.</u> at 908 ("[W]e must ask whether the law at the time of the events in question gave the officers 'fair warning' that their conduct was unconstitutional.") (quoting <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002)).

Here, Peterson's injuries from the arrest were *de minimis*. He alleges that he suffered brief difficulty breathing, temporary pain and a burning sensation in his face, and peeling skin on his lower left eyelid. He also alleges that he feels more "on edge" when going out in public. These injuries are neither severe nor permanent, did not prompt him to seek treatment, and did not affect his daily activities. The Court concludes that they do not rise to the level of injury that was required before <u>Chambers</u> to state an excessive-force claim. <u>See, e.g.</u>, <u>Wertish v. Krueger</u>, 433 F.3d 1062, 1067 (8th Cir. 2006) ("[R]elatively minor scrapes and bruises and the less-than-permanent aggravation of a prior shoulder condition were *de minimis* injuries that support the conclusion that [the officer] did not use excessive force."); <u>Herr v. Peterson</u>, 751 F. Supp. 2d 1093, 1102 (D. Minn. 2010) (Kyle, J.) ("[I]n the absence of evidence of some type of permanent injury directly related to the kicks, . . . the injuries [that plaintiff] sustained are an insufficient basis, under Eighth-Circuit precedent, upon which to predicate a Fourth-

Amendment claim."). Because Kopp caused only *de minimis* injury, he did not violate clearly established law at the time and is entitled to qualified immunity.

### C. First Amendment Retaliation (Count I)

Peterson also argues that Kopp arrested him in retaliation for exercising his First Amendment right to speech. Specifically, he alleges that Kopp arrested him for saying that Kopp was rude, asking for his badge number, and yelling, "Police brutality." (Pl.'s Mem. 37.) Kopp argues, and the Court agrees, that Kopp is entitled to qualified immunity from the claim because he had probable cause to arrest Peterson, and an arrest supported by probable cause cannot violate the First Amendment.

"A citizen's right to exercise First Amendment freedoms without facing retaliation from government officials is clearly established." Baribeau v. City of Minneapolis, 596 F.3d 465, 481 (8th Cir. 2010) (internal quotation omitted). Generally, a plaintiff establishes a prima facie case of First Amendment retaliation by showing that "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004). But when the alleged retaliatory action is an arrest, a plaintiff must show a fourth element: the officer lacked probable cause for the arrest. McCabe v. Parker, 608 F.3d 1068, 1075 (8th Cir. 2010). [2]

---

[2] In Reichle v. Howards, 132 S. Ct. 2088, 2091, 2093 (2012), the Supreme Court granted defendant-officers qualified immunity on a retaliatory arrest claim but "declined to decide 'whether a *First Amendment* retaliatory arrest claim may lie despite the presence of probable cause to support the arrest,'. . . leaving [the Eighth Circuit's] conclusion in

The Court has determined that Kopp had arguable probable cause to arrest Peterson for trespass. This determination is fatal to Peterson's retaliatory-arrest claim. See Galarnyk v. Fraser, 687 F.3d 1070, 1076 (8th Cir. 2012) ("That [the officer] had probable cause to arrest [the plaintiff] for trespass is . . . fatal to [the plaintiff's] *First Amendment* retaliatory arrest claim."); Benigni v. Smith, 121 F. App'x 164, 165–66 (8th Cir. 2005) (per curiam) ("The facts known to Smith at the time he arrested Begnini gave him arguable probable cause for the arrest. Therefore the district court correctly held that Smith has qualified immunity . . . . Our holding that Smith has qualified immunity for the alleged unlawful arrest disposes of Begnini's argument that Smith arrested him in retaliation for the exercise of his First Amendment rights."); Thayer v. Chiczewski, Nos. 10-1974 & 10-2064, 2012 U.S. App. LEXIS 19540, at *38 (7th Cir. Sept. 18, 2012) (arguable probable cause defeated retaliatory-arrest claim); Phillips v. Irvin, 222 F. App'x 928, 929 (11th Cir. 2007) (per curiam) (only arguable probable cause necessary for qualified immunity on First Amendment retaliation claim). Because Kopp had arguable probable cause, the arrest did not violate Peterson's First Amendment rights and Kopp is entitled to qualified immunity.

## II.     State-Law Claims (Counts V–IX)

All of Peterson's federal claims will be dismissed, leaving only his state-law claims remaining, over which the Court has supplemental jurisdiction. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising

---

McCabe intact." Galarnyk v. Fraser, 687 F.3d 1070, 1076 (8th Cir. 2012) (quoting Reichle).

under the Constitution, laws, or treaties of the United States."); id. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related [to the federal claims] . . . that they form part of the same case or controversy."). When all federal claims are dismissed prior to trial, the balance of factors typically weighs against exercising supplemental jurisdiction over remaining state-law claims. See e.g., Johnson v. City of Shorewood, Minn., 360 F.3d 810, 819 (8th Cir. 2004) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)). Accordingly, the Court declines to exercise supplemental jurisdiction over Peterson's remaining state-law claims (Counts V–IX), which will be dismissed without prejudice.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. 12) is **GRANTED IN PART**. The Motion is **GRANTED** as to Counts I, II, and III of the Amended Complaint (Doc. No. 10), and those claims are **DIMISSED WITH PREJUDICE**. Counts V, VI, VII, VIII, and IX of the Amended Complaint are **DISMISSED WITHOUT PREJUDICE**.[3]

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: October 15, 2012  
                                         s/Richard H. Kyle  
                                         RICHARD H. KYLE  
                                         United States District Judge

---

[3] See 28 U.S.C. § 1367(d) (tolling the limitations period for state-law claims while they are pending in federal court and for thirty days after dismissal, unless extended by state law).